UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

DANIEL DEMISSIE,

    Plaintiff,

    v.

AARON D. FORD, ATTORNEY GENERAL OF NEVADA, LAS VEGAS METROPOLITAN POLICE DEPARTMENT (metro), DETECTIVE GABRIEL LEA (#16511), OFFICER BROOKS WEST (#16134), CAESARS ENTERTAINMENT, INC., FLAMINGO LAS VEGAS OPERATING COMPANY, LLC, AND JOHN DOE, FLAMINGO ASSISTANT SECURITY SHIFT MANAGER,

    Defendants.

Case No. 2:25-cv-00504-GMN-EJY

**ORDER**

Pending before the Court is Plaintiff's Motion for Terminating Sanctions and Default Judgment Due to Fraud on the Court (ECF No. 71) as well as Plaintiff's Motion for Sanctions Under Federal Rule of Civil Procedure 11 and the Court's Inherent Authority (ECF No. 115). The Court has reviewed Plaintiff's Motion for sanctions, Plaintiff's several Motions for Leave to File a Supplemental Memorandum and Evidence (ECF Nos. 81, 85, 114, 116), and the responding briefings by the LVMPD and Caesars Defendants. The Court finds as follows.

**I.     Background**

This matter arises out of Plaintiff's arrest at the Flamingo Las Vegas Hotel and Casino (sometimes "Flamingo Hotel" or "Flamingo") on June 17, 2023. The facts are not entirely clear to the Court, but to the best of its ability to follow the events that are alleged to have occurred, Detectives Lea and West stopped, handcuffed, and searched Plaintiff on the floor of the Flamingo Hotel. ECF No. 7 at 9, 11-13. During the search, the Detectives found eight cash-out tickets from different Las Vegas casinos. *Id*. at 13; ECF No. 77 at 2. The Detectives proceeded to escort Plaintiff through the casino and into a backroom. ECF No. 7 at 13. Surveillance footage at issue shows the parties traveled across a lobby, down an escalator, and through a hallway. At some point on the

1

route, Plaintiff alleges he and the officers encountered a Flamingo Security Shift Manager ("Mikhail"). *Id*. at 14. Plaintiff alleges Detective Lea asked Mikhail if Plaintiff was a regular player and when Mikhail said no, Detective Lea handed Mikhail Plaintiff's player card with an instruction to "check him out." *Id*. After some time in the interview room, Plaintiff was cited for trespassing at the Flamingo and arrested for violating NRS 465.0881A (Commit Fraud Act in Game Establishments First Offense). ECF No. 77 at 2.

Plaintiff filed the present action on March 17, 2025, alleging violations of the Fourth and Fourteenth Amendment as well as various state laws. ECF Nos. 1, 7 at 3-4. The pending spoliation motion comes before the Court because Plaintiff believes LVMPD and Caesars have fabricated documents, manipulated footage, and withheld or otherwise destroyed the authentic video footage of the incident. ECF No. 71 at 1. In addition, Plaintiff is seeking sanctions against LVMPD and its counsel for what Plaintiff describes as bad faith conduct. ECF No. 115 at 1.

A.    Plaintiff's Motion Seeking Sanctions for Alleged Spoliation.

In his initial Motion, Plaintiff argues for spoliation sanctions based on alleged alterations to the Caesars Incident Report and the LVMPD Detectives' body worn camera ("BWC") footage.

1.    *The Incident Report*

Plaintiff alleges Caesars committed spoliation by altering an internal Incident Report. ECF No. 71 at 10. The Surveillance Department created an Incident File Summary Report at 9:55 pm on June 17, 2023[1] summarizing the initial encounter with Plaintiff and noting: "Mikhail read [Plaintiff] the trespass and LVMPD escorted [Plaintiff] out to the Alley." ECF No. 80-1 at 1. Plaintiff alleges Caesars "deliberately modified" the Report a few hours later to say Plaintiff was "'released' before Metro officers departed." ECF No. 71 at 11. Indeed, the initial Incident Report was modified to say, "Mikhail read [Plaintiff] the trespass warning … cited and released and (LVMPD) departed property." ECF No. 80-1 at 3. Plaintiff submits the subsequent report is fraudulent because Caesars made this change despite Mikhail witnessing the Detectives escort Plaintiff out of the casino in handcuffs. *Id*.

---

[1]    Plaintiff says that he submitted the report as Exhibit 2. ECF No. 71 at 10. However, Exhibit 2 does not contain the incident report but instead says "previously submitted to the Court" without citation to where it was previously filed.

Caesars argues there are no mistakes in the underlying reports because the word "released" has multiple meanings  ECF No. 80 at 6.  While Plaintiff appears to argue the word "released" is deceptive because the word implies he was let go from police custody (ECF No. 71 at 11), Caesars points out that, technically, Plaintiff was "released" from the Flamingo after he was read the trespass warning and, from there, was escorted out of the building and arrested.  ECF No. 80 at 6.  Caesars further argues the change in the Report is not fraud, but "at best, an issue of fact in dispute."  ECF No. 80 at 6.  Caesars highlights the reports themselves are not fraudulent because unlike cases cited by Plaintiff where falsified affidavits were submitted to the Court, this dispute is over slight changes in wording.  *Id.* at 6-7.  Caesars submits that even if the Court finds sanctionable conduct, default judgment is not a proportionate sanction for the discrepancies.  *Id.* at 7.  Plaintiff did not challenge the authenticity of the reports themselves and the Court notes Caesars offers an Expert Report attesting that the footage is "authentic and trustworthy to what was originally recorded, and that this opinion is to a high degree of professional certainty."  ECF No. 80-3 at 2.

### 2. *Manipulation of Footage*

Plaintiff argues the LVMPD BWC footage was edited to remove the initial interaction among two Detectives and Mikhail.  ECF No. 71 at 11.  The BWC footage at issue (ECF No. 78) briefly shows Flamingo's security manager, Mikhail, while the Detectives escorted Plaintiff to the interview room.  However, Plaintiff says there was a longer conversation between Mikhail and LVMPD Detectives, and that entire alleged conversation was "deliberately removed" from the Detectives' BWC footage.  ECF No. 71 at 11.  Plaintiff further alleges at least 23 minutes of Detective West's BWC footage, capturing the time Detective West left the interview room, was withheld.  *Id*.  Plaintiff says the missing BWC footage is significant because it could potentially show Detective West conspiring with Flamingo employees to arrest him.  *Id*.  Plaintiff notes various portions of the BWC footage at which he alleges the audio has been altered to include "deepfake insertions" of his speech.  *Id*. at 12-15.  Similarly, Plaintiff alleges footage capturing Mikhail issuing the trespass warning was altered to show a "polite version" of the event (ECF No. 71 at 12); however, Plaintiff does not explain what he means by a "polite version."

3

LVMPD argues Plaintiff offers no support for his conclusion that BWC footage was altered. ECF No. 77 at 8. LVMPD demonstrates that it produced the footage in native form and provides a declaration from its Systems Administrator describing how BWC footage is captured, stored, maintained, and produced. *Id.* In the Systems Administrator's declaration, he describes that only the Public Records Redaction Team redacts BWC footage, and it is done in accordance with Nevada Statutes to remove protected information. *Id.* at 10. Further, LVMPD submits it does not—nor could—add video or audio to existing footage. *Id.* More generally, LVMPD argues Plaintiff did not meet and confer in good faith before filing the initial spoliation motion as required by the local rules. *Id.* at 3-7. [2]

B.      Supplements.

Plaintiff filed three Motions for Leave to Supplement (ECF Nos. 85,[3] 114, 116) his Motion for Spoliation sanctions. The parties dispute whether Plaintiff demonstrates good cause for leave to supplement. While the Court has its doubts about whether Plaintiff establishes good cause for any of the supplements, it considered the memoranda and finds that none support a spoliation determination.

1.      *First Supplement*

Plaintiff appears to argue, based solely on what appears to be nothing more than his personal belief, that Detectives Lea and West's BWC were always recording video and audio, though portions of video or audio were removed. ECF No. 85-2 at 6-9. According to Plaintiff, the type of BWC each detective wore can only be in buffer or event mode. *Id.* at 4. Plaintiff says, when in buffer mode, the BWC only records video. *Id.* at 5. However, when an officer double presses the event mode button, the BWC preserves the prior thirty seconds of silent video, and then captures both audio and video until the recording is manually stopped by the officer. *Id.* Plaintiff says when in event mode, there are two beeps at the start of the recording, two beeps every two minutes during the recording, and one long beep when the recording ends. *Id.*

---

[2]      Neither Defendant includes an index for their exhibits as required by Local Rule IA 10-3(d).
[3]      At ECF No. 86, Plaintiff explains the document filed at ECF No. 81 is corrupted. Thus, ECF No. 85 is the same filing as ECF No. 81 but in readable, uncorrupted format. ECF No. 86 at 2.

Plaintiff contends there are discrepancies between Detective Lea's BWC footage and Flamingo's surveillance footage. *Id*. at 6. When viewing Detective Lea's BWC footage, Plaintiff alleges that the two-beep cue can be heard the moment Detective Lea enters the interview room indicating the BWC was in event mode. *Id*. However, Plaintiff alleges the surveillance footage from the interview room never shows Detective Lea touching his BWC in order to turn it on. Thus, Plaintiff argues the two beeps were added to Detective Lea's BWC footage to create "the false impression" that he turned his BWC on to begin a new recording when, in reality, it was always in event mode. *Id*. at 7. Similarly, Plaintiff argues Detective West does not reach for his BWC to turn it to event mode, yet there are two beeps that are audible on the BWC footage. *Id*. at 8.

Plaintiff also argues both LVMPD and Caesars deleted BWC footage and Flamingo surveillance footage showing Mikhail meeting the Detectives and escorting Plaintiff to the interview room. *Id*. at 10. Plaintiff points to the initial incident report which mentions that Mikhail spoke with Detectives as corroborating Plaintiff's version of this event. *Id*..

In this Supplement, Plaintiff's final contention is that footage from his initial interaction with the officers has been altered. Specifically, Plaintiff alleges Detective West asked: "What about the machine you just played? You did not cash out, you just played the credit in it," Plaintiff responded: "Yes, I played it," and together these are "synthetic insertions" of audio. *Id*. at 13. Plaintiff argues that various other portions of the audio were altered to include words that were never spoken. *Id*. at 15-17.

2.      *Second Supplement*

In Plaintiff's Second Supplement he alleges a three minute discrepancy between Flamingo surveillance footage timestamps is evidence the Defendants altered footage to remove Mikhail's interaction with LVMPD and Plaintiff. ECF No. 114. Plaintiff notes the timestamp from the camera capturing the Detectives and Plaintiff crossing the lobby towards the escalator is three minutes behind the timestamp on the camera actually capturing the parties on the escalator. *Id*. at 20. According to Plaintiff, the timestamp on the escalator surveillance camera is correct and, thus, signals that three minutes worth of surveillance footage capturing the casino floor and lobby was removed. *Id*. at 20-21. Plaintiff hypothesizes that the rest of the timestamps on the surveillance

footage were synchronized to reflect the three-minute removal, but Caesars neglected to change the escalator timestamp. *Id*. at 21. Plaintiff concludes there can be "no legitimate explanation" for the differing timestamps. *Id*. at 22.

Without evidence, Plaintiff states that both Detectives deactivated their BWC at "the exact moment" they started to discuss the gaming voucher. *Id*. at 27. Plaintiff argues this simultaneous deactivation is improbable, and deactivation in these circumstances was against LVMPD policy that requires officers to state the reason for deactivating their camera. *Id*. at 27-28. Plaintiff says the totality of these instances allows the Court to infer the Defendants have engaged in the use of "AI-generated composite ('deepfake')" technology and that Defendants used this technology to "justify the missing recording and avoid disclosure of the conversation that would have proven Plaintiff's claims against both Metro and Caesars." *Id*.

### 3. Third Supplement

In Plaintiff's Third Supplement he argues there is a 2.44 second skip in the Flamingo surveillance footage. ECF No. 116 at 15. Plaintiff says that at the relevant moment, the Flamingo surveillance footage "jolts" forward 2.44 seconds at which point the parties appear in different locations than before the jolt. *Id*. Plaintiff concludes this "cannot occur naturally" and therefore must signal editing, but Plaintiff does not proffer an expert or a technical basis for his assertion. *Id*. Nor does Plaintiff allege what nefarious occurred during the 2.44 second period. Instead, Plaintiff states this 2.44 second jolt allows the Court to infer video has been significantly altered to create an untruthful impression of the events. *Id*. at 16.

### C. Plaintiff's Motion Seeking Sanction Against LVMPD for Allege Bad Faith.

Plaintiff requests the Court sanction LVMPD and its counsel for "bad faith litigation conduct." ECF No. 115 at 1. Plaintiff alleges that while he was being deposed virtually, LVMPD's counsel displayed an exhibit containing Plaintiff's personal journal notes that were "clearly designated as Confidential Information." ECF No. 115 at 3. Plaintiff alleges that LVMPD's counsel was "fully aware of the confidential nature of these materials" but nevertheless "transmitted the notes through unprotected email." *Id*. at 3-4. Plaintiff contends this was a "calculated act of bad faith" because, before the deposition, LVMPD's counsel transmitted other documents for use during

the deposition through password protected encryption. *Id.* at 4. Plaintiff concludes this left the exhibit containing Plaintiff's personal journal vulnerable to access by third party federal agents monitoring his email. *Id*. Plaintiff alleges defense counsel's conduct violated the stipulated protective order and is therefore worthy of sanctions under Rule 11 and the Court's inherent authority. *Id*. at 7-8. In addition, Plaintiff says LVMPD's counsel made various unidentified false statements, some of which appear to relate to a Motion to Seal. *Id.* at 8-9. Finally, Plaintiff says LVMPD referenced a motion to extend in its Notice of Manual Filing (ECF No. 78) but the referenced motion was never filed. *Id*. at 9.

In response, LVMPD argues there is no violation of the Stipulated Protective Order because Plaintiff failed to designate the personal journal as confidential as required by that Order. ECF No. 120 at 3-7. LVMPD highlights that Plaintiff provides no evidence to support his assertion that its counsel has ever made any misrepresentations to the Court. *Id*. at 7. And, LVMPD says the reference to a motion to extend in the Notice of Manual Filing (ECF No. 78) was a simple mistake, later corrected in ECF No. 83, and does not warrant Rule 11 sanctions. *Id*. at 8.

In Reply, Plaintiff points out that LVMPD did not explain why the personal journal exhibit was transmitted over unsecured email. ECF No. 124 at 5. Plaintiff appears to argue that even if the personal journal was not properly marked under the stipulated protective order, LVMPD should have known the notes were confidential based on their inherent "sensitive" nature and because Plaintiff's Rule 26.1 disclosure listed the journal as confidential. *Id*. at 5-9.

## II.    Discussion[4]

### A.    The Court Finds No Evidence of Spoliation.

Spoliation is a serious allegation that the Court must carefully analyze. Spoliation is defined as:

> the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. ... A party must preserve evidence it knows or should know is relevant to a claim or defense by any party, or that may lead to the discovery of relevant

---

[4]    While the Court has considered all arguments presented, it does not—and need not—address every argument raised. *See PlayUp, Inc. v. Mintas*, 635 F.Supp.3d 1087, 1099 (D. Nev. 2022) (internal citations and quotations omitted) ("The Court need not explicitly discuss each and every argument in any order. The Court's refusal to discuss an argument constitutes an implicit rejection of that argument.").

evidence. ... The duty to preserve arises not only during litigation, but also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation.

*Gonzalez v. Las Vegas Metropolitan Police Dept.*, Case No. 2:09-cv-00381-JCM-PAL, 2012 WL 1118949, at *5 (D. Nev. Apr. 2, 2012) (internal citations omitted). The party seeking sanctions has the burden of proving "by a preponderance of the evidence that the accused party actually destroyed, altered, or failed to preserve relevant evidence." *U.S. E.E.O.C. v. Wedco, Inc.*, Case No. 3:12-cv-00523-RCJ-VPC, 2014 WL 4635678, at *2 (D. Nev. Sept. 15, 2014), *citing LaJocies v. City of N. Las Vegas*, Case No. 2:08-cv-00606-GMN-GWF, 2011 WL 1630331, at *1 (D. Nev. Apr. 28, 2011). Ultimately, the party asking the Court to grant spoliation must demonstrate the evidence actually existed and was destroyed." *Fernandez v. Centric*, Case No. 3:12-cv-00401-LRH-WGC, 2014 WL 2042148, at *9 (D. Nev. May 16, 2014) (citing *Genon Mid-Atlantic, LLC v. Stone & Webster*, 282 F.R.D. 346, 357 (S.D.NY. 2012).

Having considered the merits of all that is presented in the initial motion and supplemental memorandums, the Court finds Plaintiff has not met his burden to show evidence was altered or destroyed.

### 1.    No spoliation of Caesars' incident report.

The Court finds no basis for spoliation sanctions based on Caesars' production of two Incident Reports. As stated, the threshold showing for spoliation is that evidence was altered or destroyed. *Asfaw v. Wal-Mart Stores, Inc.*, Case No. 2:19-cv-01292-GMN-NJK, 2021 WL 2006283, at *2 (D. Nev. May 19, 2021). There is no dispute that Caesars produced two versions of the Incident Report, both of which are in Plaintiff's possession. *See* ECF No. 80-1. While the second Report uses slightly different wording that than the first (*compare id.* at 1, *with id.* at 3), the fact is Plaintiff is able, if he so chooses, to present argument based on the differences between the Reports. Said simply, no evidence was destroyed or altered; rather, there was an original and then updated version of the Incident Report prepared hours apart. In sum, nothing was lost or destroyed. The request for sanctions based on Caesars' production of two versions of the Incident Report are denied.

2.     *There was no spoliation of the LVMPD BWC or Caesars' Flamingo Surveillance Footage.*

The Court finds, at its core, Plaintiff argues for spoliation sanctions because the produced footage does not match his narrative. However, as the U.S. District Court for the District of New Jersey stated: "Plaintiff's assertion that the videotape must have been tampered with because the footage … does not mirror Plaintiff's version of what occurred falls short of demonstrating that Defendants tampered with, edited, or withheld any portion of the surveillance video." *Davis v. Birckhead*, Case No. CV-134614-PGS-DEA, 2015 WL 13850618, at *2 (D.N.J. Mar. 11, 2015). After a review of all of Plaintiff's arguments, Defendants' responses, and the evidence submitted, the Court finds Plaintiff offers no actual evidence that demonstrates by a preponderance of the evidence that any BWC or surveillance footage was altered or destroyed.

i.     The only evidence before the Court show there was no alteration of BWC or surveillance video.

Plaintiff alleges LVMPD BWC and Flamingo Surveillance footage were manipulated to include "deepfake insertions" of speech that Plaintiff says he never uttered. ECF Nos. 71 at 12-15, 85-2 at 13. Plaintiff points to a 2.44 second jolt that can be seen in Flamingo's surveillance footage that he contends cannot occur naturally in footage and therefore means footage was altered. ECF No. 116 at 15. Plaintiff goes so far as to allege this manipulated "jolt" calls into question the integrity of the video as a whole. *Id*. at 16. In contrast, LVMPD and Caesars each submit declarations demonstrating the produced footage is in its raw, native form. LVMPD submits a declaration by its Systems Administrator stating in relevant part: "At no time, does the Las Vegas Metropolitan Police Department add or have the ability to add in any additional audio or video footage that did not exist in the original content." ECF No. 77-16 at 4. Similarly, Caesars submits a report from an Audio Video Forensic Analyst stating that the produced files "are authentic and trustworthy to what was originally recorded … to a high degree of professional certainty." ECF No. 80-3 at 2. Plaintiff proffers no rebuttal to these well considered assertions. Moreover, the Court reviewed the submitted surveillance footage and finds no evidence of alteration. *See Barajas Centeno v. City of Carlsbad*, Case No. 19-cv-2098-L (DEB), 2021 WL 1978468, at *3 (S.D. Cal. May 18, 2021), *objections*

*overruled sub nom. Centeno v. City of Carlsbad*, Case No. 3:19-cv-2098-L-DEB, 2021 WL 4504482 (S.D. Cal. Oct. 1, 2021) (finding no alteration of video footage after *in camera* review by the Court). Plaintiff's personal belief is insufficient to establish by a preponderance that spoliation occurred.

Plaintiff makes the argument that timestamps have been altered to cover up the removal of the Detectives' interaction with Mikhail.  Plaintiff believes the three minute difference in the timestamps on the escalator camera and other cameras on the floor of the Flamingo, is a "smoking gun" showing that an interaction between Detectives and Mikhail was removed.  However, there is nothing on which the Court can rely to conclude that this difference in clock settings demonstrates purposeful alteration of video.  Relevant caselaw shows that a few minute difference in surveillance footage capturing the same event does not support manipulation of that video.  *See Montgomery v. Matteson*, Case No. 5:21-cv-00501-FWS-AFM, 2022 WL 16556042, at *9 (C.D. Cal. Sept. 14, 2022), *report and recommendation adopted*, Case No. 5:21-cv-00501-FWS-AFM, 2022 WL 16556011 (C.D. Cal. Oct. 31, 2022) (finding in a habeas corpus review that "an incorrect date and time stamp does not mean that the video was tampered-with as there are a variety of potential explanations as to why the video exhibited an incorrect date and time"); *Vigil v. Burlington N. and Santa Fe Ry. Co.*, 521 F.Supp.2d 1185, 1200 (D.N.M. 2007) (finding a difference between the actual time and an event recorder "does not imply that the underlying data is incorrect, spoliated, corrupted or manipulated").

The Court finds there is nothing other than Plaintiff's personal belief to show the timestamps on video surveillance that do not match exactly is anything other than the result of different time settings on such equipment, equipment idiosyncrasies or other reasonable explanations.  Plaintiff apparently did not depose the Systems Administrator or Caesars' Audio Video Forensic Analyst and offers no expert of his own.  In the absence of *evidence* presented by Plaintiff—as opposed to his suppositions based on assumptions of nefarious motivations that themselves are unsupported—Plaintiff fails to meet the preponderance standard he must in order to convince the Court there was spoliation.

ii.     There is no evidence to suggest any video has been withheld.

Plaintiff argues various portions of footage have been withheld by Defendants. However, to demonstrate spoliation, Plaintiff must first show relevant evidence "actually existed and was destroyed." *Fernandez*, 2014 WL 2042148 at *9. Plaintiff's allegation that Mikhail's interaction was withheld from him fails to demonstrate more video than that which was produced ever existed and, thus, does not establish such video was destroyed. Plaintiff offers his memory of the event, and while nothing in this Order precludes Plaintiff from presenting his case in accordance with his narrative, the Court will not issue spoliation sanctions for the destruction of video on the basis that Plaintiff remembers events differently. *See Davis*, 2015 WL 13850618 at *2. As discussed above, the existence of a "jolt" or a different timestamp is simply not sufficient evidence to demonstrate spoliation.

Plaintiff's allegation of spoliation based on the lack of footage from either Defendant recording Detective West for the 23 minute period he was not in the interview room fails for the same reason. Plaintiff fails to make a threshold showing that such evidence ever existed. First, the declaration from LVMPD's Systems Administrator explains that officers have discretion to start and stop their cameras when engaged in strategic discussions or personal phone calls. ECF No. 77-16 at 3. Second, Plaintiff offers no evidence to suggest Detective West was engaged in conduct relevant to the case during the 23 minute period he was outside the interview room. Third, and finally, even if BWC existed for some or all of the 23 minute period Detective West was outside the interview room, Plaintiff cites nothing to support his bald conclusion that surveillance video evidence of this time period ever existed. Plaintiff's contention that the video could have captured Detective West conspiring with Flamingo employees to have Plaintiff arrested is nothing more than pure speculation is more than a belief based on a narrative that supports a story in which Plaintiff is invested but for which there is no evidence to support. ECF No. 71 at 11.

The Court cannot conclude Defendants failed to produce something for which there is no evidence of existence. *T1 Payments LLC v. New U Life Corp.*, Case No. 2:19-cv-01816-APG-DJA, 2021 WL 139989, at *5 (D. Nev. Jan. 14, 2021), *report and recommendation adopted in part*, Case No. 2:19-cv-01816-APG-DJA, 2021 WL 3406304 (D. Nev. Aug. 4, 2021). In the absence of

evidence that BWC or surveillance video footage existed, the Court cannot conclude relevant evidence was destroyed.  Plaintiff's speculation simply fails to meet the preponderance burden he must in order to warrant sanctions.  *Loops, LLC v. Phoenix Trading Inc.*, 594 Fed.Appx. 614, 619 (Fed. Cir. 2014) ("a party cannot be sanctioned on the basis of mere speculation").

A spoliation motion is not the appropriate method for discovering if evidence ever existed.  While the submitted surveillance footage reflects a robust network of cameras, nothing before the Court establishes a particular camera could or did capture Detective West's movements while he was outside the interview room.  Further, Plaintiff does not offer cogent arguments establishing that such footage would be relevant to the issues before the Court.  Plaintiff's belief that damning evidence could have been captured on unknown cameras is simply not enough for the Court to impose sanctions.  *See e.g. Borrello v. Respironics California, LLC (P)*, Case No. 3:23-cv-00580-GPC-VET, 2024 WL 3206911, at *1 (S.D. Cal. June 26, 2024) ("Speculation and conjecture do not support a claim of spoliation of evidence.").

        B.        <u>There is No Basis to Sanction LVMPD and its Counsel for What Plaintiff Describes as Bad Faith Conduct.</u>

Inherent authority sanctions may be imposed for willful violations of a court order or bad faith conduct.  *America Unites for Kids v. Rousseau*, 985 F.3d 1075, 1090 (9th Cir. 2021).  To willfully violate a court order, a party must act deliberately.  *Evon v. L. Offs. of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012).  To demonstrate bad faith conduct, there must be "proof of bad intent or improper purpose."  *Rousseau*, 985 F.3d at 1090.  Conduct that is merely ignorant or negligent is insufficient to support a claim of bad faith.  *Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir. 2001).  "Because of their very potency, inherent powers must be exercised with restraint and discretion."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).

Plaintiff's primary argument is that LVMPD and its counsel engaged in sanctionable conduct when it transmitted an exhibit by email during Plaintiff's video deposition without encryption.  Before deposing Plaintiff, LVMPD emailed Plaintiff all exhibits it planned to use during his deposition.  ECF No. 115 at 4.  All exhibits were password protected except one that included Plaintiff's personal journal notes.  *Id*. at 3-4.  Plaintiff argues sending the exhibit without password

protection was a disclosure to third parties because Plaintiff believes he is being monitored by federal agents. *Id*. at 3-4.

The parties disagree over whether the exhibit itself was properly marked confidential under the stipulated protective order,[5] but it is undisputed that Plaintiff noted the personal journal exhibit as confidential in his Rule 26 disclosures. ECF No. 120 at 7. Despite receiving the exhibit before his deposition, Plaintiff did not raise the failure to password protect the exhibit until he was in the deposition itself. ECF No. 115 at 4. At the deposition, Plaintiff accused LVMPD's counsel of acting in bad faith because counsel knew the confidential nature of the exhibit, but still sent it over unprotected email. *See* ECF No. 120-1 at 39-40. LVMPD's counsel apologized and agreed to stipulate to marking the exhibit as confidential and sealing it. *Id*.

These facts do not provide a basis for sanctions. Setting aside questions over whether there was, in fact, a violation of the Stipulated Protective Order, Plaintiff has not demonstrated LVMPD's actions were either willful or rooted in bad intent/improper purpose. Plaintiff argues the personal journal exhibit was the only exhibit sent without password protection (ECF No. 115 at 7); however, the Court does not and cannot find a deliberate act—let alone an act with bad intent or improper purpose—based on the treatment of a single exhibit. The Court does not foreclose that there is no set of facts where the singling out of a document could be seen as potentially signaling bad faith; but that circumstance would generally be part of a demonstrated pattern of carelessness. *See Singleton v. Bail Hotline Bail Bonds, Inc.*, Case No. 8:22-cv-01826-MRA-KES, 2024 WL 4800877, at *6 (C.D. Cal. June 28, 2024) ("[The party's] conduct evidences carelessness verging on bad faith."); *Gonzales v. Gillespie*, Case No. 2:14-cv-00792-GMN-NJK, 2015 WL 7069294, at *2 (D. Nev. Nov. 10, 2015) (imposing sanctions for "habitual non-compliance" as demonstrating the party's "cavalier attitude toward court orders."). There is no pattern of carelessness or other conduct by defense counsel in this case that supports bad faith.

Plaintiff's argument also fails in other respects. The Court has concerns over Plaintiff's failure to diligently raise his concern regarding receipt of his journal without encryption. There is

---

[5]   LVMPD submits in Plaintiff's Rule 26.1 disclosure, he included "CONFIDENTIAL" but did not properly mark the exhibit in accordance with the Stipulated Protective Order by putting CONFIDENTIAL on every page. ECF No. 120 at 7. LVMPD does not say whether—at least—the first page of the exhibit displayed the word CONFIDENTIAL.

no dispute that the personal journal exhibit was transmitted over email ahead of Plaintiff's deposition, but Plaintiff did not raise any issue with this transmission until the deposition itself. While it is unclear how much time passed between the email transmission and the deposition, Plaintiff cannot sit idly by a violation of the stipulated protective order only to raise the issue at what appears to be a more strategic time. In fact, here, the Stipulated Protective Order explicitly discusses how to handle unauthorized disclosure of protected material that Plaintiff did not follow. *See* ECF No. 65 at 6.

Further, and perhaps most importantly, the Court finds no evidence to suggest the exhibit was used in a manner violative of the Stipulated Protective Order. The parties may dispute whether Plaintiff—who is proceeding *pro se*—complied with the technical requirements for marking the exhibit, but for all intents and purposes the exhibit was treated as confidential. That is, it was only shared between the parties. Plaintiff's unsupported belief that third party federal agents are monitoring his email does not change the analysis.

Plaintiff's remaining allegations lacks merit. Plaintiff says LVMPD's counsel made false statements in various filings. With the exception of one example, all Plaintiff provides are citations to his own briefs where he raises arguments about the authenticity of BWC footage.[6] *See* ECF No. 115 at 8 *citing* ECF No. 84: Plaintiff's Reply to LVMPD's Opposition to the Initial Motion for Spoliation Sanctions, and ECF No. 96: Plaintiff's Opposition to LVMPD's Motion to Seal BWC Footage. In sum, Plaintiff's failure to identify any actual false statement is without evidentiary support. Altogether, the Court finds no basis for imposing sanctions on LVMPD or its counsel.

**III.    Order**

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion for Terminating Sanctions and Default Judgment Due to Fraud on the Court (ECF No. 71) is DENIED.

---

[6] To the extent Plaintiff cites LVMPD incorrectly referencing a Motion to Extend Discovery in its Notice of Manual Filing at ECF No. 78, LVMPD amended its Notice of Manual Filing to remove the reference a week later. *See* ECF No. 83. An inaccurate sentence in a notice that was later corrected is plainly not sanctionable conduct. *See Arroyo v. Yard H. Irvine Spectrum, LLC*, Case No. SACV 23-01915-CJC (ADSx), 2024 WL 245626, at *2 (C.D. Cal. Jan. 19, 2024) ("The Court declines to sanction what appears to be an honest mistake followed by a prompt attempt to correct course."); *Ellison v. Montana Wardens*, Case No. CV 17-00045-H-DLC-JTJ, 2018 WL 3383427, at *3 (D. Mont. July 11, 2018) ("A typographical error is not a basis for sanctions.").

IT IS FURTHER ORDERED that Plaintiff's Supplemental Motions for Leave to File Document (ECF Nos. 81, 85, 114, 116) are GRANTED to the extent the Court considered argument contained therein.

IT IS FURTHER ORDERED that Plaintiff's Motion for Sanctions Under Fed. R. Civ. P. 11 and the Courts Inherent Authority for Violations of Court-Approved Stipulated Protective Order (ECF No. 115) is DENIED.

Dated this 13th day of February, 2026.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE