# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

DANIEL DEMISSIE,

               Plaintiff,

    vs.

AARON D. FORD, *et al.*,

               Defendants.

Case No.: 2:25-cv-00504-GMN-EJY

**ORDER**

Pending before the Court is the Motion for Summary Judgment, (ECF No. 128), filed by Defendants Las Vegas Metropolitan Police Department ("LVMPD"), Officer Brooks West, and Officer Gabriel Lea (collectively "the LVMPD Defendants"). Plaintiff Daniel Demissie filed a Response, (ECF No. 151), to which the LVMPD Defendants replied, (ECF No. 156). Next pending before the Court are the Motions for Summary Judgment, (ECF Nos. 133, 134), filed by Defendants Caesars Entertainment, Inc. and Flamingo Las Vegas Operating Company, LLC (collectively "the Caesars Defendants").[1] Plaintiff filed a Response, (ECF No. 150), to which the Caesars Defendants replied, (ECF No. 158). Defendant Aaron Ford filed joinders to the Motions for Summary Judgment, (ECF Nos. 143, 144), and Replies, (ECF Nos. 155, 157). Further pending before the Court is the Motion for Preliminary Injunction, (ECF No. 47), filed by Plaintiff. Defendant Aaron Ford filed a Response, (ECF No. 67), to which Plaintiff replied, (ECF No. 68).

---

[1] The Caesars Defendants filed one Motion for Summary Judgment, (ECF No. 134), under seal, and the other, (ECF No. 133), publicly on the docket.

Also pending before the Court is the Motion to Dismiss, (ECF No. 20), filed by the Caesars Defendants.[2]  Plaintiff filed a Response, (ECF No. 28),[3] to which the Caesars Defendants replied, (ECF No. 32).  Further pending before the Court is the Motion to Strike Answer, (ECF No. 30).  The LVMPD Defendants filed a Response, (ECF No. 40), to which Plaintiff replied, (ECF No. 42).[4]  Further pending before the Court is the Motion for Leave to File an Amended Complaint, (ECF No. 49), filed by Plaintiff.  The Caesars Defendants filed a Response, (ECF No. 59), to which Plaintiff replied, (ECF No. 62).[5]  Also pending before the Court is another Motion to Strike, (ECF No. 90), filed by Plaintiff.  The Caesars Defendants filed a Response, (ECF No. 103), to which Plaintiff replied, (ECF No. 106).[6]

Further pending before the Court is an Objection, (ECF No. 109), to one of Magistrate Judge Youchah's Orders, (ECF No. 105).  The LVMPD Defendants filed a Response, (ECF

[2] Because the Court finds that the Caesars Defendants are entitled to summary judgment, the Court DENIES as moot their Federal Rule of Civil Procedure ("FRCP") 12(b)(6) Motion to Dismiss, (ECF No. 20).  Moreover, the Court DENIES as moot Plaintiff's Motion for Leave, (ECF No. 37), to file a surreply to the Motion to Dismiss.

[3] Plaintiff's Notice of Corrected Image at ECF No. 41 is an improper supplement to his Response and the Court does not consider it.

[4] Plaintiff moves to strike many of the LVMPD Defendants' affirmative defenses raised in their Answer.  "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  Striking affirmative defenses is disfavored and is identified as "a drastic remedy" that "should be denied if substantial questions of fact appear at the pleading stage." *Aristocrat Techs., Inc. et al. v. AGS, LLC, et al.*, Case No. 2:18-cv-00396-GMN-GWF, 2018 WL 11266535, at *1 (D. Nev. June 26, 2018).  Because substantial questions of fact appeared at the pleading stage, the Court DENIES Plaintiff's Motion to Strike, (ECF No. 30).

[5] Plaintiff requests leave to amend his First Amended Complaint to replace the John Doe Caesars Defendant with the individual's proper name, Peter Mikhail, and argues that doing so would not add any additional claims.  But Plaintiff does not allege direct claims against the John Doe Defendant.  He merely mentions the John Doe Defendant to support his claims against the Caesars Defendants under a theory of respondeat superior.  Plaintiff has not demonstrated good cause to add new claims to his Complaint and replacing the John Doe Defendant's name with the identified individual is futile to his claims against the Caesars Defendants.  Thus, the Motion for Leave to Amend, (ECF No. 49), is DENIED.

[6] Plaintiff moves to strike an exhibit attached to the Caesars Defendants' Response to Plaintiff's Motion for Sanctions.  Magistrate Judge Youchah already addressed Plaintiff's objections to the disputed exhibit in her Order Denying Plaintiff's Motion for Case Terminating Sanctions, (ECF No. 168).  Accordingly, the Motion to Strike, (ECF No. 90), is DENIED as moot.

No. 113).[7] Also pending before the Court is another Objection, (ECF No. 145), to one of Magistrate Judge Youchah's Orders, (ECF No. 138).[8] Further pending before the Court is Plaintiff's Objection, (ECF No. 153), to the Magistrate's Order, (ECF No. 148). The Caesars Defendants and the LVMPD Defendants filed Responses, (ECF No. 159, 160), to which Plaintiff replied, (ECF No. 162).[9] Further pending before the Court are several Motions for Leave, (ECF Nos. 149, 164–166, 170), filed by Plaintiff. Defendants filed Responses, (ECF Nos. 154, 167), to which Plaintiff replied, (ECF Nos. 161, 173).[10]

---

[7] Any party wishing to object to a magistrate judge's order on a pretrial matter must file and serve "specific written objections." LR IB 3-1. A district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). Plaintiff objects to Magistrate Judge Youchah's Order granting the LVMPD Defendants' Motion to Seal. Plaintiff first argues that Judge Youchah applied the incorrect legal standard to the Motion to Seal. She did not. (*See* Order Granting Motion to Seal 4:17–18, ECF No. 105 (correctly applying the "compelling reasons" standard)). Plaintiff next argues that Judge Youchah incorrectly applied the burden to Plaintiff to prove why the body-worn camera footage should not be sealed. She did not. (*Id.* 3:28 ("Plaintiff need not disprove the request to seal is appropriate.")). Plaintiff further argues that Judge Youchah incorrectly relied on Nevada Revised Statute 289.025 ("NRS") to make her determination. For the reasons discussed in the LVMPD Defendants' Response, she did not. Plaintiff also argues that Judge Youchah erred when she applied the doctrine of judicial estoppel in granting the Motion to Seal. But Judge Youchah did not apply this doctrine, so this objection is moot. Plaintiff forwards other objections concerning the LVMPD Defendants' counsel's integrity and ethics, but these allegations do not establish that any part of Judge Youchah's Order was clearly erroneous or contrary to law. Thus, Plaintiff's Objection, (ECF No. 109), is OVERRULED.

[8] Plaintiff objects to Magistrate Judge Youchah's Ordering Denying Plaintiff's Motion to Seal, arguing that (1) Judge Youchah failed to apply the proper sealing framework, and (2) relied on erroneous factual assessments. First, Judge Youchah applied the correct legal framework. (*See* Order Denying Mot. Seal 1:17–2:8, ECF No. 138). Second, Judge Youchah's factual assessments are not erroneous. It is true that Plaintiff submitted 45 pages worth of screenshots and did not identify what parts of those screenshots should be sealed. Thus, Judge Youchah's factual assessment was not erroneous. Plaintiff's Objection, (ECF No. 145), is therefore OVERRULED.

[9] Plaintiff objects to Magistrate Judge Youchah's Order Granting the Caesars and LVMPD Defendants' Motions to Seal body-worn camera footage and casino surveillance footage arguing that (1) Judge Youchah applied an incorrect legal standard, and (2) she did not require the Caesars Defendants to demonstrate compelling reasons sufficient to justify sealing the evidence. First, Judge Youchah applied the correct legal standard. (*See* Order Granting Mots. to Seal 1:22–2:4, ECF No. 148). Second, Judge Youchah did require the Caesars Defendants to demonstrate that they had met the "compelling reasons" standard. (*Id.* 2:20–21 ("The Court finds there are compelling reasons to seal the exhibits based on the sensitive information contained therein.")). Thus, Plaintiff's Objection, (ECF No. 153), is OVERRULED.

[10] In ECF No. 149, Plaintiff moves the Court for leave to file Responses to the LVMPD Defendants and Caesars Defendants' Motions for Summary Judgment in excess of the 30-page limit. But Plaintiff's Responses are 30 pages, so the Motion for Leave, (ECF No. 149), is DENIED as moot. In ECF No. 164, Plaintiff requests leave to file a supplemental document that authenticates the exhibits he attached to his Responses to the pending Motions

Further pending before the Court is Plaintiff's Objection, (ECF No. 174), to Magistrate Judge Youchah's Order Denying Plaintiff's Motion for Case Terminating Sanctions.[11]  The LVMPD Defendants and Caesars Defendants filed Responses, (ECF Nos. 178, 179).  Also pending before the Court is the Motion for Reconsideration, (ECF NO. 177), filed by Plaintiff.[12]  Finally pending before the Court is the Motion for Sanctions, (ECF No. 180), filed by Plaintiff.[13]

---

for Summary Judgment.  For good cause appearing, and because the Motion is unopposed, Plaintiff's Motion for Leave, (ECF No. 164), is GRANTED. *See* LR 7-2(d).  In ECF Nos. 165 and 166, Plaintiff requests leave to file supplemental authorities and evidence in support of his Responses to the pending Motions for Summary Judgment.  Plaintiff's request concerns evidence that has been in the record and that Plaintiff had the opportunity to review, prior to the filing of his Responses.  The request also seeks to supplement the record with websites and news articles that were in existence prior to the time of the filing of his Responses.  Plaintiff therefore does not demonstrate good cause to allow him to file supplement authorities and evidence.  Thus, the Motions for Leave, (ECF Nos. 165, 166), are DENIED.  Lastly, in ECF No. 170, Plaintiff seeks leave to file a supplemental memorandum in support of his Motion for Case Terminating Sanctions, (ECF No. 71).  But, at the time of the filing of the Motion for Leave, Judge Youchah had already ruled on Plaintiff's Motion for Case Terminating Sanctions.  Thus, Plaintiff's Motion for Leave, (ECF No. 170), is DENIED as moot.

[11] Plaintiff objects to Magistrate Judge Youchah's Order Denying his Motion for Case Terminating Sanctions arguing that the motion was dispositive and therefore Judge Youchah did not have the authority to issue an Order.  But in a subsequent filing Plaintiff stated: "Plaintiff filed an objection to [the Order Denying his Motion for Case Terminating Sanctions] on February 27, 2026, initially arguing that the Magistrate Judge lacked jurisdiction.  Plaintiff now concedes that jurisdictional argument." (Mot. Reconsider 2:19–20, ECF No. 177).  In another subsequent filing, (ECF No. 182), Plaintiff seeks to supplement that statement stating it was a typo and he only "partially" concedes the jurisdiction argument.  But this is more than a textual correction.  Plaintiff seeks to change the substance of the Motion for Reconsideration, but he did not request leave of Court to do so, so the Court does not consider the amendment. LR 7-2(g).  Therefore, the Court construes Plaintiff's statement conceding that Magistrate Judge Youchah had jurisdiction as a withdrawal of his Objection.  Accordingly, the Objection, (ECF No. 174), is OVERRULED as withdrawn.

[12] Plaintiff moves the Court to reconsider Magistrate Judge Youchah's Order Denying the Motion for Case Terminating Sanctions arguing that defense counsel is evading federal authorities, Magistrate Judge Youchah is covering up organized crime, and Defendants are committing fraud on the Court.  The Court need not wait on this motion to be fully briefed before resolving it.  The Motion lacks merit and Plaintiff fails to present credible evidence to support his strong accusations.  Plaintiff's Motion for Reconsideration, (ECF No. 177), is DENIED.

[13] Plaintiff moves for case terminating sanctions arguing that defense counsel Matthew Freeman misrepresented certain portions of a declaration.  The Court need not wait on this motion to be fully briefed before resolving it.  These arguments mirror arguments Plaintiff has already presented the Court which were rejected by Judge Youchah. (*See* Reply, ECF No. 124); (*see* Order Denying the Motion for Case Terminating Sanctions at n.4, ECF No. 168 ("While the Court has considered all arguments presented, it does not—and need not—address every argument raised. *See PlayUp, Inc. v. Mintas*, 635 F. Supp. 3d 1087, 1099 (D. Nev. 2022) (internal citations and quotations omitted) ("The Court need not explicitly discuss each and every argument in any order.  The Court's refusal to discuss an argument constitutes an implicit rejection of that argument.").")).  Accordingly, the Court need not reconsider Plaintiff's arguments again and his Motion for Sanctions, (ECF No. 180), is DENIED.

Because there are no genuine disputes of material fact, the Court GRANTS the Motions for Summary Judgment and resolves the other pending motions for the reasons discussed in this Order.

## I.   BACKGROUND

This action arises out of Plaintiff's alleged deprivation of constitutional rights when he was arrested for violating Nevada Revised Statute ("NRS") 465.070(3) while visiting the Flamingo Hotel and Casino (the "Flamingo").  In July 2023, Plaintiff was visiting Las Vegas, participating in a poker tournament, staying at various properties, including Harrah's, and gambling at those properties. (Demissie Dep. 32:14–25, 35:1–4, Ex. A to LVMPD Mot. Summ. J., ECF No. 128-1).  On the night at issue, Plaintiff was inside the Flamingo casino, which is owned and operated by Caesars Entertainment, Inc.  LVMPD Officers Lea and West, were on the same casino floor and witnessed Plaintiff walking through the casino and looking down at various slot machines as he walked past them. (Decl. Arrest at 2, Ex. B to LVMPD Mot. Summ. J., ECF No. 128-2).  Lea and West witnessed Plaintiff walk past a slot machine, sit down, not put any money or a credit ticket into the machine, and press the "Cash Out" button. (*Id.*).  Based on their training and observation of Plaintiff's actions, Lea and West determined that Plaintiff was acting in violation of NRS 465.070(3). (*Id.*).  This statute makes it illegal "[t]o claim, collect or take, or attempt to claim, collect or take, money or anything of value in or from a gambling game, with intent to defraud, without having made a wager contingent thereon, or to claim, collect or take an amount greater than the amount won." NRS 465.070(3). Lea and West then approached Plaintiff, informed him that he was being detained for committing a fraudulent act, and escorted him to one of the backrooms on the casino floor to continue their investigation. (*See* Lea Body-Worn Camera ("BWC") Footage, Ex. D. to Mot. Summ. J., manual filing).

Once in the backroom, Lea asked Plaintiff if he could search him to which Plaintiff consented to. (*Id.* at 00:03:45–00:03:53, Ex. D to LVMPD Mot. Summ. J.).  Lea and West found eight credit tickets from other Las Vegas casino properties on Plaintiff's person. (Decl. Arrest at 2, Ex. B to Mot. Summ. J.).  Lea also read Plaintiff his *Miranda* rights before Lea told Plaintiff the actions that the officers had observed Plaintiff take. (Lea BWC Footage at 00:05:40–00:06:12, Ex. D to LVMPD Mot. Summ. J.).  Then Lea and West consulted with a Flamingo security officer, Peter Mikhail, who subsequently trespassed Plaintiff from the Flamingo by reading him a trespass. (*Id.* at 00:00:41–00:01:19, Ex. D to Caesars Mot. Summ. J.).  Thereafter, Lea and West arrested Plaintiff and transported him to the Clark County Detention Center where he was booked. (Decl. Arrest at 2, Ex. B to LVMPD Mot. Summ. J.).  Plaintiff appeared before the Clark County Justice Court and received an Order Out Corridor barring his access to the Las Vegas Strip for approximately eight months. (Demissie Order Out Corridor, Ex. H to LVMPD Mot. Summ. J., ECF No. 128-8); (Demissie Dep. 30:19–23, Ex. A to LVMPD Mot. Summ. J.).

Plaintiff commenced this action, suing the Defendants for Fourth and Fourteenth Amendment violations, among other federal and state law claims.  Plaintiff premises most of his claims against the Defendants on his contention that the BWC footage produced by the LVMPD Defendants was edited, altered, and/or "deep faked" and the Caesars Defendants participated in a conspiracy with the LVMPD Defendants involving the altered BWC footage. In resolving a previous motion filed by Plaintiff, Magistrate Judge Youchah determined that "Plaintiff offers no actual evidence that demonstrates by a preponderance of the evidence that any BWC or surveillance footage was altered or destroyed." (Order re Mot. Sanctions 9:10–11, ECF No. 168).

Plaintiff brings the following claims against the LVMPD Defendants: (1) deliberate fabrication of evidence, (2) deprivation of protected liberty interest, (3) malicious prosecution,

(4) unreasonable search and seizure, (5) *Monell* liability, (6) conspiracy to deprive constitutional rights, (7) equal protection violation, (8) equal protection violation, (9) failure to intervene, (10) defamation per se, (11) intentional infliction of emotional distress,  (12) civil conspiracy, (13) false arrest, and (14) battery.  Additionally, Plaintiff brings the following claims against the Caesars Defendants: (1) conspiracy to deprive constitutional rights, (2) equal protection violation, (3) defamation per se, (4) premises liability, (5) intentional infliction of emotional distress, and (6) civil conspiracy.  Aaron Ford is named as a Defendant for purposes of Plaintiff's prayer for injunctive relief based on his constitutional challenge to NRS 465.070(3).

## II.    LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*  "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank  of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)).  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Restaurants., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citation and quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir.

2002).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III.    DISCUSSION

The Court begins by addressing Plaintiff's evidentiary arguments related to the Motions for Summary Judgment.

### A. Evidentiary Arguments

In response to the Motions for Summary Judgment, Plaintiff raises an objection under FRCP 56(c)(2).  FRCP 56(c)(2) provides "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Plaintiff submits that Defendants do not identify a witness nor custodian who can authenticate the BWC footage, the casino surveillance footage, the Caesars's incident report, nor Plaintiff's deposition excerpts. (Resp. to LVMPD 4:13–16, ECF No. 151); (Resp. to Caesars 4:15–18, ECF No. 150).

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).  Indeed, authentication is a "condition precedent to admissibility," and this condition is satisfied by "evidence sufficient to support a finding that the item is what the proponent claims."

Fed. R. Evid. 901(a).  "Unauthenticated documents cannot be considered in a motion for summary judgment." *Orr*, 285 F.3d at 773.  At the summary judgment stage, documents authenticated through personal knowledge must be "attached to an affidavit that meets the requirements of [Fed. R. Civ. P.] 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Id.* at 774 (citing *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987)).

Beginning with the admissibility of the BWC footage, the LVMPD Defendants sufficiently authenticated the BWC footage through their Declaration in Support of their Motion for Summary Judgment as well as disclosing the identity of relevant Rule 30(b)(6) witnesses through their initial and supplemental FRCP 26.1 disclosures.  Moreover, the Caesars Defendants sufficiently authenticated the casino surveillance footage and the incident report through their supplemental FRCP 26(f) disclosure.  Lastly, Plaintiff's deposition was authenticated by Certified Court Reporter Donna Kells, License Number X101207, on page 255 of the deposition. (Demissie Dep. 255:23–25, Ex. A to LVMPD Mot. to Dismiss).[14]  Thus, Plaintiff's FRCP 56(c)(2) objection is OVERRULED.

Plaintiff also moves the Court to defer or deny summary judgment under FRCP 56(d) for lack of essential facts. (Resp. to LVMPD 4:25); (Resp. to Caesars 5:1).  But upon a closer reading of Plaintiff's requested remedy, he requests that the Court permit additional discovery under Rule 56(d) *if* Magistrate Judge Youchah does not find fraud on the Court and determines that the present record is insufficient to resolve summary judgment. (Resp. to LVMPD 5:19–20); (Resp. to Caesars 5:21–23).  Magistrate Judge Youchah previously determined that there was no fraud on the Court, (*see* Order Denying Plaintiff's Motion for Case Terminating

---

[14] Plaintiff also filed a Motion to Strike, (ECF No. 181), to preclude use of his deposition transcript submitted in support of the LVMPD Defendants' Motion for Summary Judgment.  Plaintiff alleges portions of the deposition transcript were altered or falsified by defense counsel Matthew Freeman.  But Freeman did not prepare the deposition transcript; a certified court reporter did who authenticated the deposition's accuracy.  Thus, the Court is unpersuaded by Plaintiff's arguments and DENIES his Motion to Strike, (ECF No. 181).

Sanctions, ECF No. 168), and the Court finds that the present record is sufficient to resolve summary judgment. Thus, Plaintiff's request for relief under FRCP 56(d) is DENIED as moot.

### B. LVMPD Defendants' Motion for Summary Judgment

The LVMPD Defendants move for summary judgment on all of Plaintiff's claims which the Court addresses in turn.[15]

### 1. Federal Causes of Action

Plaintiff's federal causes of action are brought pursuant to 42 U.S.C. § 1983. Section 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

### a. Deliberate Fabrication of Evidence

The Ninth Circuit has established that people have a Fourteenth Amendment right to be free from criminal charges on the basis of false evidence that was deliberately fabricated by the government. *Gantt v. City of Los Angeles*, 717 F.3d 702, 707 (9th Cir. 2013). In order to support such a claim, Plaintiff must, "at a minimum, point to evidence that supports at least one of the following two propositions: (1) Defendants continued their investigation of [Plaintiff]

---

[15] The LVMPD Defendants first argue that several of Plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). "Under *Heck*, a § 1983 claim must be dismissed if 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence,' unless the conviction or sentence has already been invalidated." *Sanders v. City of Pittsburg*, 14 F.4th 968, 970 (9th Cir. 2021) (quoting *Heck*, 512 U.S. at 487). *Heck* thus "bars a plaintiff's action if it would negate an element of the offense, or allege facts inconsistent with the plaintiff's conviction." *Sanders*, 14 F.4th at 970–71 (citation omitted). But Plaintiff was not convicted of NRS 465.070; he was only charged and given an Order Out Corridor. The LVMPD Defendants do not point the Court to any authority applying the *Heck* doctrine to a charged offense, rather than a conviction, nor an Order Out Corridor. Thus, the LVMPD Defendants fail to establish that the *Heck* doctrine bars any of Plaintiff's claims.

despite the fact that they knew or should have known that he was innocent; or (2) Defendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information." *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

The crux of this claim is Plaintiff's allegations that Lea fabricated BWC footage, lied about the actions he witnessed Plaintiff doing, and omitted the origin of the credit tickets in Plaintiff's possession. (FAC ¶ 272). Beginning with the first allegation, the LVMPD Defendants argue that Plaintiff has not produced any evidence to demonstrate that they fabricated evidence nor falsified the statements contained in the Declaration of Arrest Report. (LVMPD Defs. Mot. Summ. J. 8:17–19). Indeed, when considering Plaintiff's Motion for Case Terminating Sanctions, Magistrate Judge Youchah held that "Plaintiff offers no actual evidence that demonstrates by a preponderance of the evidence that any BWC or surveillance footage was altered or destroyed." (Order re Mot. Sanctions 9:10–11, ECF No. 168). Still here, there is nothing in the record to support that any of the BWC footage was fabricated.

Moreover, there is no evidence in the record to support a finding that Lea lied about the actions he witnessed Plaintiff doing on the day at issue. In fact, the record reveals that after Plaintiff was read his *Miranda* rights, Lea informed Plaintiff that he saw Plaintiff sit down at multiple slot machines that he was not playing at prior, press the cash out button, and then leave. (Lea BWC Footage at 00:05:40–00:06:12, Ex. D to LVMPD Mot. Summ. J., manual filing). Plaintiff replied to Lea, "yes, you are exactly right." (*Id.* at 00:06:13–00:06:16). Thus, Plaintiff himself confirmed Lea's observations. Lastly, the origin of Plaintiff's credit tickets was not omitted from the Declaration of Arrest, which states "[Plaintiff] was in possession of multiple gaming tickets all ranging from the LINQ, Cosmopolitan, Harrah's, Paris, and more." (Decl. Arrest at 2, Ex. B to LVMPD Mot. Summ. J., ECF No. 128-2).

Applying the record to the *Devereaux* propositions, it is devoid of any evidence to show that the LVMPD Defendants continued a criminal investigation despite their knowledge that Plaintiff was innocent, or that the officers used some kind of investigative method so coercive that those techniques would yield unreliable evidence.  Thus, the LVMPD Defendants meet their initial burden of negating an essential element of Plaintiff's claim.

Now turning to Plaintiff's Response, Plaintiff fails to offer evidence establishing that the LVMPD Defendants fabricated evidence, falsified the Declaration of Arrest, and omitted the origin of his credit tickets.  Plaintiff continues to argue that the LVMPD Defendants did so, but Plaintiff relies on his own declaration which largely mirrors the allegations made in his FAC to support his assertions.  As courts within this jurisdiction have repeatedly held, legal memoranda alone are insufficient to support a plaintiff's burden under FRCP 56(c). *Smith v. Mack Trucks, Inc.*, 505 F.2d 1248, 1249 (9th Cir. 1974) ("But legal memoranda and oral argument are not evidence, and they cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion where no dispute otherwise exists.").  In sum, Plaintiff fails to put forth sufficient evidence to demonstrate that there is a genuine dispute of material fact as to whether the LVMPD Defendants fabricated evidence, lied about Plaintiff's actions, or omitted the origin of his credit tickets in the Declaration of Arrest.  The Court therefore GRANTS summary judgment to the LVMPD Defendants for Plaintiff's claim for deliberate fabrication of evidence.

### b.  Procedural Due Process

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1.  To prevail on a claim for a procedural due process violation, the party must prove "two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *United States v. 101 Houseco, LLC*, 22 F.4th 843, 851 (9th Cir. 2022)

(quoting *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998)).

Plaintiff's procedural due process claim is based on (1) the LVMPD Defendants' alleged fabrication of evidence, and (2) not being given an opportunity to be heard prior to the Clark County Justice Court issuing the Order Out Corridor. (FAC ¶¶ 300–303). The LVMPD Defendants argue that this claim, as it relates to fabricated evidence, fails for the reasons discussed above, and the Court agrees. (Mot. Summ. J. 10:7–16). Moreover, the LVMPD Defendants also argue that to the extent this claim is based on Plaintiff not receiving due process in Clark County Justice Court, that claim cannot succeed against the LVMPD Defendants. (Mot. Summ. J. 10:7–16). The Court also agrees. The LVMPD Defendants are a separate entity and individuals from the Clark County Justice Court. Thus, the LVMPD Defendants meet their initial burden of negating an essential element of Plaintiff's procedural due process claim.

The Court now turns to address whether Plaintiff meets his burden. As was the case above, Plaintiff fails to put forth sufficient evidence to demonstrate that there is a genuine dispute of material fact as to whether the LVMPD Defendants fabricated evidence. Moreover, Plaintiff fails to put forth evidence to establish how the LVMPD Defendants would be liable for the alleged actions of Clark County Justice Court. Thus, the Court GRANTS summary judgment to the LVMPD Defendants for Plaintiff's procedural due process claim.

### c. Unreasonable Search and Seizure & Malicious Prosecution[16]

Plaintiff brings a Fourth Amendment claim for unreasonable search and seizure and malicious prosecution. The Fourth Amendment protects "[t]he right of the people to be secure

---

[16] Plaintiff also brings a Section 1983 claim for unreasonable search and seizure under the Nevada Constitution. This fails as a matter of law because Section 1983 only confers a private right of action for violations of the United States Constitution and laws of the United States. *Tsao*, 698 F.3d at 1138.

in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  The Court first addresses whether the search of Plaintiff was constitutional.

### i. Search

The LVMPD Defendants fail to put forth points and authorities about the lawfulness of Plaintiff's search, but because Plaintiff contends his search was unlawful in his FAC and in his Response to the LVMPD Defendants' Motion for Summary Judgment, the Court considers whether summary judgment should be granted for this issue. (FAC ¶ 364); (Resp. to LVMPD Defs. 13:11–17).  "An individual may waive his Fourth Amendment rights by giving voluntary and intelligent consent to a warrantless search of his person, property, or premises." *United States v. Torres-Sanchez*, 83 F.3d 1123, 1129 (9th Cir. 1996).  Relevant factors for determining the voluntariness of consent to a search include: (1) whether the defendant was in custody; (2) whether the arresting officer had his gun drawn; (3) whether *Miranda* warnings had been given; (4) whether the defendant was told he has a right not to consent; and (5) whether the defendant was told a search warrant could be obtained. *Id.* (citing *United States v. Castillo*, 866 F.2d 1071, 1082 (9th Cir. 1988)).  "These factors are only guideposts, not a mechanized formula to resolve the voluntariness inquiry." *United States v. Rodriguez–Preciado*, 399 F.3d 1118, 1126 (9th Cir. 2005),  *amended,* 416 F.3d 939 (9th Cir. 2005).  Whether consent is freely given is based on the totality of the circumstances. *United States v. Cormier*, 220 F.3d 1103, 1112 (9th Cir. 2000).

Here, Plaintiff had not been arrested when Lea asked to search Plaintiff and Lea had not drawn his gun.  While Plaintiff had not been given *Miranda* warnings and the officers did not inform him of his right to refuse consent or that a search warrant could be sought, those factors do not automatically render consent involuntary. *See Torres-Sanchez*, 83 F.3d at 1130 (finding consent voluntary, despite the fact that no *Miranda* warnings had been given, there had been no admonition to the [party] regarding his right to refuse consent, and the officer never explained

that a search warrant could be obtained).  Because Plaintiff was not under arrest at the time Lea asked to search Plaintiff, there was no need for *Miranda* warnings at that point in time. *United States v. Camas*, No. 24-CR-00513-PHK-1, 2025 WL 1207542, at *15 (N.D. Cal. Apr. 25, 2025).  As the BWC footage shows, Lea asked if he could search Plaintiff, and significantly, Plaintiff immediately consented by saying "yes" and did so without any hesitation. (Lea BWC Footage at 00:03:45–00:03:53, Ex. D to LVMPD Mot. Summ. J.).  Plaintiff offers no evidence or case law that can refute this; he merely contends that the search was unreasonable.  Thus, there is no genuine dispute of material fact as to whether Plaintiff's search was lawful.

### ii.  Arrest

Because arrests are "seizures" of "persons," they must be reasonable under the circumstances. *See Payton v. New York,* 445 U.S. 573, 585 (1980).  An arrest is reasonable if supported by probable cause. *See generally Beck v. State of Ohio*, 379 U.S. 89 (1964).  "Probable cause exists when the police know 'reasonably trustworthy information sufficient to warrant a prudent person in believing that the accused had committed or was committing an offense.'" *United States v. Del Vizo*, 918 F.2d 821, 825 (9th Cir. 1990) (quoting *United States v. Delgadillo–Velasquez*, 856 F.2d 1292, 1296 (9th Cir. 1988)).  Moreover, the Supreme Court has held that probable cause is "not a high bar" and depends on the "totality of the circumstances." *See D.C. v. Wesby*, 583 U.S. 48, 57 (2018).  "Law enforcement officers may draw upon their experience and expertise in determining the existence of probable cause." *United States v. Garza*, 980 F.2d 546, 550 (9th Cir.1992)

The LVMPD Defendants argue that Plaintiff's arrest satisfied constitutional requirements.  They point to several pieces of evidence to support this argument.  First, Lea stated he observed Plaintiff appearing to violate NRS 465.070. (Lea BWC Footage at 00:05:40–00:06:12, Ex. D to LVMPD Mot. Summ. J.).  Second, Plaintiff admitted to the actions forming the basis for the offense, apologized for doing so, and admitted he did not know it was a felony.

(*Id.* at 00:06:13–00:06:16, 00:12:08–00:12:36).  Thus, the LVMPD Defendants have met their initial burden of negating an essential element of Plaintiff's unlawful arrest claim, *i.e.*, that there was probable cause to arrest Plaintiff.

The Court now turns to whether Plaintiff puts forth evidence to establish that a genuine dispute of material fact exists.  Plaintiff first argues that officers lack probable cause to arrest when they arrest a suspect for conduct that did not constitute a crime. (Resp. to LVMPD Defs. 11:11–12) (citing *Alford v. Haner,* 333 F.3d 972, 976 (9th Cir. 2003), *rev'd and remanded sub nom. Devenpeck v. Alford*, 543 U.S. 146 (2004)).  But the conduct Plaintiff is alleged to have committed and was ultimately arrested for, does constitute a crime under NRS 465.070(3).  Thus, this argument is unavailing.  Plaintiff next argues that the officers lacked probable cause because the arrest rested on an erroneous and unsupported understanding of the law.  But Plaintiff fails to cite any evidence in the record to support this claim.[17]  Plaintiff therefore fails to demonstrate that a genuine dispute of material fact exists as to whether the officers had probable cause to arrest Plaintiff.[18]

Thus, because Plaintiff's search was lawful and because probable cause existed to arrest Plaintiff, the LVMPD Defendants are entitled to summary judgment on Plaintiff's claims for malicious prosecution and unreasonable search and seizure.

### d.  Class of One Equal Protection

"An equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called 'class of one.'" *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601

---

[17] The evidence Plaintiff does cite appears to go towards his *Monell* liability claim and is unpersuasive to the Court regarding his argument that the officers lacked probable cause to arrest him. (*See* Resp. to LVMPD Defs. 12:14–16).

[18] Because the LVMPD Defendants had probable cause to arrest Plaintiff, Plaintiff's malicious prosecution claim fails as a matter of law. *Chiaverini v. City of Napoleon, Ohio*, 602 U.S. 556, 558 (2024) ("To succeed on such a Fourth Amendment malicious-prosecution claim under 42 U.S.C. § 1983, a plaintiff must show that a government official charged him without probable cause, leading to an unreasonable seizure of his person.").

(2008).  To succeed on a class-of-one equal protection claim, Plaintiff must demonstrate that he has been "(1) intentionally (2) treated differently from others similarly situated and that (3) there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam).  A "class-of-one plaintiff must be similarly situated to the proposed comparator in all material respects." *SmileDirectClub, LLC v. Tippins*, 31 F.4th 1110, 1123 (9th Cir. 2022).

Plaintiff's equal protection claim is premised on Plaintiff's allegation that the LVMPD Defendants fabricated evidence and maliciously prosecuted Plaintiff in order to deny Plaintiff his Equal Protection rights.  For the reasons discussed above, there is no evidence to sustain a fabrication or malicious prosecution claim.  Thus, Plaintiff's equal protection claim likewise fails to survive summary judgment.  Accordingly, the LVMPD Defendants are entitled to summary judgment on this claim.

### e.  Excessive Force

Claims of excessive force are analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395–97 (1989).  Under this standard, "the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (internal quotation marks omitted).  In determining whether a particular use of force was unreasonable and thus in violation of the Fourth Amendment, courts must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the government's countervailing interests. *Id.*

Plaintiff's excessive force claim is based on the officers' application of handcuffs to Plaintiff.  But the mere use of handcuffs, without more, does not violate the Fourth Amendment. *See e.g., Pernell v. City of Los Angeles*, 650 F. Supp. 3d 910, 927–28 (C.D. Cal. 2022) (citing *Sen v. City of Los Angeles*, No. 2:21-cv-02326-SB-KES, 2022 WL 2236085, at *9

(C.D. Cal. Apr. 20, 2022)). There are no facts in the record to demonstrate, for example, that the handcuffs were too tight. *LaLonde v. Cnty. of Riverside*, 204 F.3d 947, 960 (9th Cir. 2000) ("[T]ight handcuffing can constitute excessive force."). Thus, the LVMPD Defendants' meet their initial burden of negating an essential element of Plaintiff's excessive force claim, *i.e.*, the use of force to handcuff Plaintiff was not objectively unreasonable.

In Response, Plaintiff argues the officers' use of force to place handcuffs on him was unreasonable and a violation of his Fourth Amendment rights. (Resp. 24:21–25:6 (citing *Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th Cir. 2003); *Espinosa v. City & Cnty. of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010); *Rice v. Morehouse*, 989 F.3d 1112, 1122 (9th Cir. 2021)). The cases Plaintiff relies on to support his argument, however, detail fact patterns where the force used went beyond merely handcuffing a person, so the cases are unpersuasive. Plaintiff cites to no evidence or case law that demonstrates he has met his burden of establishing that there is a genuine dispute of material fact with respect to this claim. Thus, the LVMPD Defendants are entitled to summary judgment on Plaintiff's excessive force claim.

### f. Failure to Intervene

"[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000), , *as amended* (Oct. 31, 2000) (internal quotation marks and citations omitted). As discussed above, the LVMPD Defendants are entitled to summary judgment on all of Plaintiff's constitutional claims. Without evidence that his constitutional rights were violated, Plaintiff, as a matter of law, cannot properly maintain a claim that any of the officers failed to intervene in a constitutional violation. Thus, the LVMPD Defendants are entitled to summary judgment on this claim as well.

### g. Conspiracy to Deprive Constitutional Rights

"To prove conspiracy. . . under § 1983, an agreement or meeting of minds to violate the [plaintiff's] constitutional rights must be shown." *Woodrum v. Woodward Cnty. Okl.*, 866 F.2d 1121, 1126 (9th Cir. 1989). The plaintiff "must show (1) an agreement between the defendants to deprive the plaintiff of a constitutional right, (2) an overt act in furtherance of the conspiracy, and (3) a constitutional deprivation." *Davis v. Powell*, 901 F. Supp. 2d 1196, 1217 (S.D. Cal. 2012). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Davis*, 901 F. Supp. 2d at 1217; *see also Allen v. Iranon*, 99 F. Supp. 2d 1216, 1238 (D. Haw. 1999), *aff'd,* 283 F.3d 1070 (9th Cir. 2002) (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1541 (1989)).

Because the Court finds that the LVMPD Defendants are entitled to summary judgment on Plaintiff's constitutional claims against them, Plaintiff's § 1983 conspiracy claim necessarily fails as a matter of law because the record is devoid of any facts that a constitutional deprivation occurred. *See Davis*, 901 F. Supp. 2d at 1217. Accordingly, the LVMPD Defendants are entitled to summary judgment on Plaintiff's § 1983 conspiracy claim.

### h. *Monell* Liability

Under *Monell*, municipalities can be sued directly under § 1983 for violations of statutory or constitutional rights. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). Because the Court finds that the LVMPD Defendants are entitled to summary judgment on Plaintiff's constitutional claims, Plaintiff's *Monell* liability claim necessarily fails as a matter of law. Accordingly, the LVMPD Defendants are entitled to summary judgment on Plaintiff's *Monell* liability claim.

## 2. Defamation

To succeed on a defamation claim in Nevada, a plaintiff must show: (1) "a false and defamatory statement of fact by the defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Tsao*, 698 F.3d at 1148 (quoting *Pope v. Motel 6*, 114 P.3d 277, 282 (Nev. 2005)).  Because Nevada adopts defamation by pantomime as an actionable intentional tort, the first element of a defamation claim can be satisfied by conduct as well as words or a combination of both. *K-Mart Corp. v. Washington*, 866 P.2d 274, 276, 282 (Nev. 1993); *see Tsao*, 698 F.3d at 1148 (9th Cir. 2012) (explaining that the imputation of wrongdoing by pantomime, *i.e.* walking a person in public in handcuffs, if communicated to a third party, is unquestionably slander per se).  However, a defamation claim based on an arrest fails if the arrest was supported by probable cause. *Tsao*, 698 F.3d at 1148.

Because Plaintiff's defamation claim against the LVMPD Defendants is based on him being handcuffed, (FAC ¶ 476), the claim fails because Plaintiff's initial detention and then arrest was supported by probable cause.  Thus, the LVMPD Defendants are entitled to summary judgment on this claim.

## 3. Intentional Infliction of Emotional Distress

An IIED claim contains the following elements: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress, and (3) actual or proximate causation." *Star v. Rabello*, 625 P.2d 90, 92 (Nev. 1981).  "[E]xtreme and outrageous conduct is that which is 'outside all possible bounds of decency' and is regarded as 'utterly intolerable in a civilized community.'" *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (quoting Cal. Book of Approved Jury Instructions No. 12.74).

To the extent that Plaintiff's IIED claim is based on his arrest, it necessarily fails because the arrest was supported by probable cause. *Cassette v. King Cnty.*, 625 F. Supp. 2d 1084, 1091 (W.D. Wash. 2008), *aff'd*, 338 F. App'x 585 (9th Cir. 2009). And to the extent that Plaintiff's IIED claim is based on his allegations that the LVMPD Defendants fabricated evidence, the claim also fails because, as discussed above, there is no evidence in the record to support a finding that the LVMPD Defendants fabricated or falsified evidence. Thus, the LVMPD Defendants are entitled to summary judgment on Plaintiff's IIED claim.

### 4.  False Arrest

In Nevada, to establish a claim for false imprisonment or arrest, a plaintiff must prove that he was restrained of his liberty under the probable imminence of force without any legal cause or justification. *See Hernandez v. City of Reno*, 634 P.2d 668, 671 (Nev. 1981). As discussed above, there is no genuine dispute of material fact as to whether Plaintiff's arrest was properly based upon probable cause. Thus, the LVMPD Defendants are entitled to summary judgment for Plaintiff's state law false arrest claim.

### 5.  Battery

To prevail on a battery claim in Nevada, a plaintiff must demonstrate that the defendant: (1) intended to cause harmful or offensive contact; and (2) such contact occurred. *Burns v. Mayer*, 175 F. Supp. 2d 1259, 1269 (D. Nev. 2001) (citing Restatement (Second) of Torts §§ 13, 18 (1965)). In Nevada, police officers are privileged to use the amount of force reasonably necessary. *See Yada v. Simpson*, 913 P.2d 1261, 1262 (Nev. 1996), *superseded by statute on other grounds as recognized by RTTC Commc'n, LLC v. Saratoga Flier, Inc.*, 110 P.3d 24, 29 (Nev. 2005). Officers are "liable for battery to the extent they use more force than is reasonably necessary." *Gordon v. Las Vegas Metro. Police Dep't*, No. 2:13-cv-01095-GMN-GWF, 2015 WL 5344549, at *11 (D. Nev. Sept. 14, 2015); *Ramirez v. City of Reno*, 925 F. Supp. 681, 691 (D. Nev. 1996) (applying Nevada law); *see Yada*, 913 P.2d at 1262.

Plaintiff's battery claim, based on the application of handcuffs, fails as a matter of law because the force used was not more that reasonably necessary for the reasons discussed above. Thus, the LVMPD Defendants are entitled to summary judgment on this claim.

### 6. Civil Conspiracy

Under Nevada law, a civil conspiracy is a "combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage." *Collins v. Union Federal Sav. & Loan Ass'n.*, 662 P.2d 610, 622 (Nev. 1983). Here, there is no evidence that the LVMPD Defendants took any action to accomplish an unlawful objective, because there is no evidence that anything unlawful occurred because the LVMPD Defendants are entitled to summary judgment on Plaintiff's constitutional and state law tort claims. Thus, the LVMPD Defendants are entitled to summary judgment on Plaintiff's state law civil conspiracy claim.

In sum, the LVMPD Defendants' Motion for Summary Judgment is GRANTED.

### C. Caesars Defendants' Motion for Summary Judgment

The Caesars Defendants likewise move for summary judgment on the claims alleged against them.

### 1. Class of One Equal Protection

As stated above, "[a]n equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called 'class of one.'" *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008). To succeed on a class-of-one equal protection claim, Plaintiff must demonstrate that he has been "(1) intentionally (2) treated differently from others similarly situated and that (3) there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). A "class-of-one plaintiff must

be similarly situated to the proposed comparator in all material respects." *SmileDirectClub, LLC v. Tippins*, 31 F.4th 1110, 1123 (9th Cir. 2022).

Plaintiff's equal protection claim is premised on his allegation that Flamingo employees arbitrarily enforced NRS 465.070(3) against Plaintiff.  The Caesars Defendants argue that the record is devoid of any evidence that they targeted Plaintiff as a class of one to deprive him of his Equal Protection rights. (Caesars Defs. Mot. Summ. J. ECF No. 133).[19]  The Court agrees. In fact, the record supports a finding that Plaintiff's treatment was not arbitrary at all, but, per Plaintiff's own testimony, consistent with others who are alleged to have violated NRS 465.070(3). (Demissie Decl. ¶ 150, Ex. 1 to Resp. to Caesars, ECF No. 150-1) ("I have also personally observed police and casino security detaining or arresting individuals on multiple occasions for similar alleged TITO-related conduct.").  The Caesars Defendants therefore meet their initial burden, and Plaintiff fails to present evidence that establishes there is a genuine dispute of material fact.  Thus, the Caesars Defendants are entitled to summary judgment on this claim.

### 2.  Conspiracy to Deprive Constitutional Rights

"To prove conspiracy. . . under § 1983, an agreement or meeting of minds to violate the [plaintiff's] constitutional rights must be shown." *Woodrum*, 866 F.2d at 1126.  The plaintiff "must show (1) an agreement between the defendants to deprive the plaintiff of a constitutional right, (2) an overt act in furtherance of the conspiracy, and (3) a constitutional deprivation." *Davis v. Powell*, 901 F. Supp. 2d 1196, 1217 (S.D. Cal. 2012).  "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Davis*, 901 F. Supp. 2d at 1217; *see also Allen*,

---

[19] In Reply, the Caesars Defendants refute Plaintiff's claim made in his Response, that they were acting under the color of state law.  The Court does not determine whether the Caesars Defendants were acting under the color of state law in this Order, because the Caesars Defendants are entitled to summary judgment on the §1983 claims because no Constitutional violation occurred. *See Tsao*, 698 F.3d at 1138.

99 F. Supp. 2d at 1238 (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1541 (1989)).  A § 1983 conspiracy claim may arise when a private actor conspires with a state actor to deprive a person of a constitutional right under color of state law. *See Dennis v. Sparks*, 449 U.S. 24, 28–29 (1980).

Because the Court finds that all Defendants are entitled to summary judgment on Plaintiff's constitutional claims against them, Plaintiff's § 1983 conspiracy claim necessarily fails as a matter of law because the record is devoid of any facts that a constitutional deprivation occurred.  Accordingly, the Caesars Defendants are entitled to summary judgment on Plaintiff's § 1983 conspiracy claim.

### 3. Defamation

To succeed on a defamation claim in Nevada, a plaintiff must show: (1) "a false and defamatory statement of fact by the defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Tsao*, 698 F.3d at 1148 (quoting *Pope*, 114 P.3d at 282 (Nev. 2005)).  A statement concerning imputation of a crime has been historically held to constitute defamation per se. *Pope*, 114 P.3d  at 282.

Plaintiff's defamation claim against the Caesars Defendants is based on his allegation that Flamingo security officer, Mikhail stated: "Here at the Flamingo we do not want someone like you," and "I don't know why Harrah's would want someone like you." (FAC ¶ 489); (Resp. to Caesars 19:13–14, ECF No. 150).  Plaintiff alleges that Mikhail made these statements right before he issued Plaintiff a trespass based on the alleged fraud activity.  The Caesars Defendants argue that no Flamingo employee made any false and defamatory statements to anyone concerning imputation of a crime. (Caesars Defts. Mot. Summ. J. 15:5–6). In reviewing the BWC footage before Mikhail reads Plaintiff the trespass, West explains to Plaintiff that the behavior he had engaged in—approaching slot machines and pressing the cash

out button—is not the kind of behavior that Flamingo wants on the property. (Lea BWC Footage 00:00:35–00:00:40, Ex. D to Caesars Mot. Summ. J., manual filing).  Mikhail then told Plaintiff that because he is a guest at Harrah's, he should stay at Harrah's and read Plaintiff a trespass warning. (*Id.* 00:00:41–00:01:19).  Mikhail also warned Plaintiff that pursuant to the trespass warning, Plaintiff could be arrested if he returned to the Flamingo property. (*Id.*).  Mikhail's statements before and during issuing Plaintiff a trespass do not constitute defamation because nothing false was said.  Thus, the Caesars Defendants meet their burden of negating an essential element of Plaintiff's defamation claim.

In Response, Plaintiff argues that Mikhail's statements accused Plaintiff of criminal activity without factual basis. (Resp. to Caesars 20:3–4).  But Mikhail's statements did not accuse Plaintiff of any criminal activity; he warned him of the criminal consequences Plaintiff would face if he returned to the Flamingo after being issued a trespass.  Plaintiff therefore fails to establish that there is a genuine dispute of material fact.  Thus, the Caesars Defendants are entitled to summary judgment on Plaintiff's defamation claim.

### 4. Premises Liability

In Nevada, premises liability is a theory of negligence that establishes a duty of care via ownership of the premises at issue. *See Turner v. Mandalay Sport Ent., LLC*, 180 P.3d 1172, 1175 (Nev. 2008).   To prevail on a negligence claim in Nevada, "a plaintiff must establish four elements: (1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages." *Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.*, 221 P.3d 1276, 1280 (Nev. 2009). "Whether a defendant owes a plaintiff a duty of care is a question of law." *Scialabba v. Brandise Constr. Co.*, 921 P.2d 928, 930 (Nev. 1996).  The existence of a duty is "a question of law to be determined solely by the courts." *Turner,* 180 P.3d at 1177.  Breach and proximate cause, however, are generally questions of fact. *Foster v. Costco Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012).

Under Nevada Revised Statute 651.015, the Caesars Defendants are not liable for the acts of a third-party, in this case Defendants Lea and West, unless: "(a) The wrongful act which caused the death or injury was foreseeable; and "(b) There is a preponderance of evidence that the owner or keeper did not exercise due care for the safety of the patron or other person on the premises." Nev. Rev. Stat. 651.105(1).  Pursuant to the statute, "a wrongful act is not foreseeable unless: (a) The owner or keeper failed to exercise due care for the safety of the patron or other person on the premises; or (b) Prior incidents of similar wrongful acts occurred on the premises and the owner or keeper had notice or knowledge of those incidents." Nev. Rev. Stat. 651.015(3).

The Caesars Defendants first argue that they owe no duty to Plaintiff to permit him to patron the Flamingo Las Vegas property. (Caesars Defs. Mot. Summ. J. 17:22–24).  Indeed, the Caesars Defendants are permitted to trespass individuals from Flamingo Las Vegas pursuant to NRS 207.200 and NRS 651.020.  Because the Caesars Defendants meet their initial burden, the Court turns to Plaintiff's Response.  In response, Plaintiff does not put forth any rebuttal to argue that the Caesars Defendants did in fact owe him a duty to patron the Flamingo Las Vegas property. (*See* Resp. to Caesars Defs. 20:7–21:23).  Thus, as a matter of law, the Caesars Defendants did not owe a duty to Plaintiff to allow him to patron the property.

As to the acts of the third-parties, Lea and West, the Caesars Defendants argue that there is no evidence in the record that suggests that it was foreseeable to the Caesars Defendants that the LVMPD officers would cause injury to the Plaintiff; nor that the Caesars Defendants failed to exercise due care for his safety. (Caesars Defs. Mot. Summ. J. 18:6–9).  The Caesars Defendants point to Plaintiff's deposition, where Plaintiff was asked if he "was aware of any prior incidents that the Caesars Defendants would be aware of as far as Metro officers harming people on their properties?" (Demissie Dep. 218:17–20, Ex. I to Caesars Defs. Mot. Summ. J., ECF No. 133).  Plaintiff responded that an LVMPD officer falsely arrested a patron at a

Caesars's owned property in 2024. (*Id.* 218:21–220:5).  But Plaintiff's claims stem from an incident that happened in 2023.  So, the 2024 incident Plaintiff testified about could not have put Defendant Caesars on notice of prior similar wrongful acts, such that Lea and West's actions were foreseeable to the Caesars Defendants.  The Court also finds that the record is devoid of any evidence that the Caesars Defendants failed to exercise due care for the safety of Plaintiff such that the officers' actions were foreseeable.  Significantly, as discussed above, the LVMPD Defendants did not violate any of Plaintiff's constitutional rights nor commit a tort against him so there was no injury for the Caesars Defendants to foresee.  Thus, the Caesars Defendants meet their initial burden of negating an essential element of Plaintiff's premises liability claim as it relates to third-party action: duty.

Now turning to Plaintiff's Response, Plaintiff argues that the Caesars Defendant's owed him a duty but fails to put forth any evidence supporting his arguments or evidence that rebuts the evidence cited by the Caesars Defendants.  Thus, Plaintiff fails to meet his burden of establishing that there is a genuine dispute of material fact.  The Caesars Defendants are therefore entitled to summary judgment on Plaintiff's premises liability claim.

### 5.  Intentional Infliction of Emotional Distress

An IIED claim contains the following elements: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress, and (3) actual or proximate causation." *Star v. Rabello*, 625 P.2d 90, 92 (Nev. 1981).  "[E]xtreme and outrageous conduct is that which is 'outside all possible bounds of decency' and is regarded as 'utterly intolerable in a civilized community.'" *Maduike*, 953 P.2d at 26 (quoting Cal. Book of Approved Jury Instructions No. 12.74).

The Caesars Defendants argue that there is no extreme or outrageous conduct, whether intentional or in reckless disregard, on the part of Flamingo employees as it relates to the

subject incident. (Caesars Defts. Mot. Summ. J. 19:23–24).  Indeed, the Caesars Defendants have a statutory right to issue trespasses.  Moreover, nothing about this specific trespass rises to the level of extreme and outrageous conduct such that the conduct was "outside all possible bounds of decency" nor can this specific conduct be regarded as "utterly intolerable in a civilized community." *Maduike*, 953 P.2d at 26.  The Caesars Defendants therefore meet their initial burden of negating an essential element of Plaintiff's IIED claim.

The Court now turns to address whether Plaintiff meets his burden of establishing a genuine dispute of material fact.  He does not.  Plaintiff only argues that the Caesars Defendants are liable for IIED because of their use of fabricated evidence. (Resp. to Caesars 22:6–23:5).  The Court has already determined that the record is devoid of any evidence that could lead a reasonable juror to believe that any evidence was fabricated.  Thus, the Caesars Defendants are entitled to summary judgment on this claim.

### 7.  Civil Conspiracy

Under Nevada law, a civil conspiracy is a "combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage." *Collins.*, 662 P.2d at 622.  Here, there is no evidence that the Caesars Defendants took any action to accomplish an unlawful objective, because there is no evidence that anything unlawful occurred because the Caesars Defendants are entitled to summary judgment on Plaintiff's constitutional and state law tort claims.  Thus, the Caesars Defendants are entitled to summary judgment on Plaintiff's state law civil conspiracy claim.

In sum, the Caesars Defendants' Motion for Summary Judgment is GRANTED.

### D.  Defendant Aaron Ford

Because the Court grants the LVMPD Defendants and Caesars Defendants' Motions for Summary Judgment, there remains only one Defendant named in this action, Aaron Ford.

Plaintiff names Aaron Ford as a Defendant in this action but does not allege any causes of action against him. (*See generally* FAC).  Plaintiff appears to have included Ford pursuant to Fed. R. Civ. P. 5.1 because he questions the constitutionality of NRS 465.070. *See*, *e.g.,* FAC ¶¶ 235–260 (alleging history and application of statute and claims of unconstitutional application); (*see also* ¶ 25 (identifying Defendant Ford as Nevada's Attorney General and that he is "responsible for enforcing and defending the constitutionality of state laws")).  Ford argues he is not a proper party to this action in his Joinders to the Motions for Summary Judgment and Replies to Plaintiff's Responses to the Motions for Summary Judgment. Moreover, in his Answer to the FAC, Ford states that (1) Plaintiff's claims are barred by the Eleventh Amendment to the United States Constitution and (2) the Court lacks personal jurisdiction over Defendant State as well as subject matter jurisdiction. (Ans. ¶¶ 15–16, ECF No. 57).  Because of Ford's arguments which Plaintiff was on notice of, raised affirmative defenses, and because the Court has the inherent authority to manage its docket, the Court considers whether Aaron Ford is a proper party.

The Eleventh Amendment generally bars federal lawsuits against a state. *Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992).  But in *Ex parte Young*, 209 U.S. 123, (1908), the Supreme Court created an exception to this rule.  This exception allows suits against state officials for the purpose of enjoining the enforcement of an unconstitutional state statute. *Eu*, 979 F.2d at 704.  The individual state official sued "must have some connection with the enforcement of the act." *Ex parte Young*, 209 U.S. at 157.  "This connection must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *Eu*, 979 F.2d at 704.  If a challenged statute is not of the type to give rise to enforcement proceedings, a state official nonetheless may be named as a defendant under *Ex parte Young* if he has responsibility to "give effect" to the law. *See, e.g., Eu*, 979 F.2d at 704.

The only connection that Plaintiff pleads is that Ford, "as the chief legal officer of Nevada, [is] responsible for enforcing and defending the constitutionality of state laws." (Compl. ¶ 25). This allegation does not establish a connection that is "fairly direct"; rather it merely alleges "a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision," which "will not subject an official to suit." *Eu*, 979 F.2d at 704. Thus, Plaintiff fails to establish a direct connection between Ford and the enforcement of the challenged act. Accordingly, the Court finds that Ford is not a proper party and he is dismissed as a party.[20]

## IV.    CONCLUSION

**IT IS HEREBY ORDERED** that the Caesars Defendants' Motion to Dismiss, (ECF No. 20), is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike, (ECF No. 30), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave, (ECF No. 37), is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Preliminary Injunction, (ECF No. 47), is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to Amend, (ECF No. 49), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike, (ECF No. 90), is **DENIED** as moot.

---

[20] Plaintiff filed a Motion for Preliminary Injunction moving the Court for a preliminary injunction enjoining enforcement of NRS 465.070(3): (1) as applied to Plaintiff; and (2) as applied to TITO-based slot machine play in Nevada, on the grounds that the statute is unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment. (Mot. Prelim. Inj. 1:15–23, ECF No. 47). Plaintiff's Motion for Preliminary Injunction is based on the relief he appears to seek against Ford in his SAC. Because Ford is dismissed as a party, Plaintiff's Motion for Preliminary Injunction is DENIED as moot.

**IT IS FURTHER ORDERED** that Plaintiff's Objection, (ECF No. 109), is **OVERRULED**.

**IT IS FURTHER ORDERED** that the LVMPD Defendants' Motion for Summary Judgment, (ECF No. 128), is **GRANTED**.

**IT IS FURTHER ORDERED** that the Caesars Defendants' Motions for Summary Judgment, (ECF Nos. 133, 134), are **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Objection, (ECF No. 145), is **OVERRULED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave, (ECF No. 149), is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiff's Objection, (ECF No. 153), is **OVERRULED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave, (ECF No. 164), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave, (ECF No. 165), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave, (ECF No. 166), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave, (ECF No. 170), is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiff's Objection, (ECF No. 174), is **OVERRULED** as withdrawn.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Reconsideration, (ECF No. 177), is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Sanctions, (ECF No. 180), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike, (ECF No. 181), is **DENIED**.

The Clerk of Court is kindly instructed to enter judgment in favor of Defendants and close the case.

**DATED** this __27__ day of March, 2026.

_____
Gloria M. Navarro, District Judge
United States District Court